1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
  *perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
714.540.1235 / 714.755.8290 Fax

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
  *jennifer.barry@lw.com*
  Patrick C. Justman (Bar No. 281324)
  *patrick.justman@lw.com*
  Adam A. Herrera (Bar No. 328043)
  *adam.herrera@lw.com*
12670 High Bluff Drive
San Diego, CA  92130
858.523.5400 / 858.523.5450 Fax

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC, a Delaware limited liability company, | CASE NO.  8:25-cv-01007 |
| Plaintiff, | **Complaint For:** |
| v. | **(1)  Trademark Infringement (Lanham Act, 15 U.S.C. § 1114)** |
| JOHN DOE d/b/a ENTERPRENUER.ORG, and DOES 1-9, inclusive, | **(2)  Unfair Competition/False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))** |
| Defendants. | **(3)  Common Law Trademark Infringement** |
| | **(4)  Common Law Unfair Competition** |
| | **<u>DEMAND FOR JURY TRIAL</u>** |

# COMPLAINT

## NATURE OF ACTION

1.      Plaintiff Entrepreneur Media, LLC ("Plaintiff" or "EM") brings this Complaint against John Doe d/b/a *enterprenuer.org* and Does 1-9 (collectively, "Defendants") for (i) federal trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (ii) common law trademark infringement and unfair competition under California law.

2.      By using their confusingly similar ENTERPRENUER mark on identical and/or closely related goods and services, Defendants threaten to usurp EM's hard-earned goodwill.  Indeed, Defendants' mark is nothing more than a slight misspelling of EM's ENTREPRENEUR mark, with the (a) "TRE" changed to "TER" and (b) "EUR" changed to "UER."  For clarity, EM will refer to Defendants' mark as the "EN<u>TER</u>PREN<u>UER</u> Mark" or the "Infringing Mark" to ensure this subtle spelling change does not go unnoticed.

3.      EM alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

## THE PARTIES

4.      EM is a Delaware limited liability company with its principal place of business at 1651 East 4th Street, #125, Santa Ana, California 92701.

5.      Defendants are persons or entities responsible in whole, or in part, for the wrongdoing alleged in this Complaint.  The true names and capacities of Defendants are unknown to EM, who therefore sues these Defendants by such fictitious names.  EM is informed, and therefore believes and alleges, that each of the Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EM will amend this

1  Complaint if and when the identities of such persons or entities and/or the scope of

2  their actions become known.

3      6.      Defendants conduct business throughout the United States, including

4  California and in this District, using the ENTERPRENUER Mark.

5      7.      As fully detailed below, Defendants use the ENTERPRENUER Mark

6  in a manner that violates EM's longstanding and strong rights in the

7  ENTREPRENEUR® mark.

8                    **JURISDICTION AND VENUE**

9      8.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court

10  has subject matter jurisdiction over EM's claims for relief for violation of the

11  Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental

12  jurisdiction over EM's state law claims because they are joined with substantial

13  and related claims under the Lanham Act.  This Court also has supplemental

14  jurisdiction over EM's state law claims pursuant to 28 U.S.C. § 1367(a) because all

15  of EM's claims arise out of a common nucleus of operative facts.

16      9.      This Court has personal jurisdiction over Defendants because

17  Defendants have: (a) conducted substantial business in the State of California and

18  this District by advertising, targeting, offering, selling, and providing their

19  goods/services to residents of this District; (b) derived financial benefits from

20  residents of the State of California by doing so; (c) purposefully availed

21  themselves of the privilege of conducting business in the State of California; and

22  (d) sought the protection and benefits of the laws of the State of California.  In

23  addition, the causes of action arise from Defendants' activities within and actions

24  targeted at the State of California.

25      10.      Moreover, as explained further below, this Court has personal

26  jurisdiction over Defendants because they have: (a) purposefully targeted EM with

27  full knowledge and awareness that EM conducts business in California; and

28

(b) caused consumer confusion by using a mark that is confusingly similar to EM's mark.

11.    Venue in this Court exists under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to EM's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EM and Its Successful ENTREPRENEUR® Brand

12.    For over forty years, EM (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners.

13.    EM's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

14.    EM is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles. ENTREPRENEUR® magazine is published six times per year with a current print and digital paid circulation, including both subscriptions and single-copy sales, of more than 400,000 copies in the United States and worldwide and over 3 million magazine readers.

15.    ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community, as shown here:

  

16.    ENTREPRENEUR® magazine also annually publishes, and has

continuously published for over thirty years, the highly anticipated Franchise 500®

ranking of America's top franchises using EM's top-secret formula:



17.    EM also publishes and distributes in the United States and worldwide

over 120 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR

PRESS® imprint, and with over 2.5 million books sold, including translations in

multiple languages throughout the world:



18.    EM also conducts seminars, webinars, workshops, and other

educational programs geared towards teaching others to successfully start and

operate businesses.  In one such program, EM has created, and for the last several

years offered and sponsored, an exclusive online subscription program under the

ENTREPRENEUR LEADERSHIP NETWORK® brand, whereby selected

industry experts provide their advice, ideas and other content to help educate EM's

millions of website visitors—both existing and potential business owners and

entrepreneurs.  Over the years, EM has also sponsored events, which have

included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by

1   Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference

2   sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference

3   sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and

4   American Airlines.

5        19.   In addition to its website at *entrepreneur.com*, which it has owned and

6   operated continuously since 2002, EM also disseminates and markets its content

7   and services through its mobile apps, and its various social media channels on such

8   platforms as Facebook®, YouTube®, Instagram®, and LinkedIn®, and with a total

9   of over 16 million followers.

10        20.   The website at *entrepreneur.com* has recently averaged more than 2.9

11   million unique users and more than 4.6 million page views per month, and with

12   over 6 million unique visitors across all of EM's digital platforms.

13        21.   EM has also launched apps for iPhones/ iPads and Android:



18        22.   EM produces and offers a variety of podcasts, on its website at

19   *entrepreneur.com*, and also distributed under the ENTREPRENEUR Mark on

20   Spotify and Apple Podcast, as well as other outlets:



23.    In addition to the ENTREPRENEUR Mark, EM has also offered its various goods and services under its "E" logo (the "E Logo"), an example of which is shown below:



24.    EM has used the E Logo to develop, create, distribute, market, advertise, and sell a wide variety of goods and services.  EM has used the E Logo since as early as 2013.

25.    EM's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships include: (i) annual rankings of top undergraduate and graduate colleges for entrepreneurship by The Princeton Review; (ii) webinars on topics such as leadership, starting and running a business, and marketing and social media, sponsored by such well-known companies as Comcast Business and Oracle NetSuite® ; and (iii) videos presented by business leaders, such as the co-founder of Netflix® and the president and owner of In-N-Out Burger.  EM's past co-branding relationships have included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; and (iii) Great Place to Work® (annual Best Small & Medium Workplaces rankings).

26.    Most recently, EM has partnered with Yelp® to create AMERICA'S FAVORITE MOM & POP SHOPS®, an annual listing and ranking of 150 of America's most popular independently owned and operated small businesses throughout the U.S.  EM has also partnered with Yelp® since 2020 to create a series of podcasts entitled ***Behind the Review***, featuring conversations with

business owners and reviewers about how small businesses can best respond to the

needs and expectations of their customers.  In addition, EM has: (i) partnered with

Steve Case's *Rise of the Rest™*, a nationwide program to promote entrepreneurship

in start-up ecosystems in middle America; (ii) hosted a contest with Canon USA

under the rubric *Project Grow Challenge*, in which businesses were awarded

money based on how they proposed to grow their businesses through increased

productivity and consumer awareness; and (iii) partnered with Chivas Brothers

Limited as its exclusive media content partner, in connection with and support of

Chivas' annual event known as *The Venture*, a worldwide competition to discover,

celebrate, and award with investment dollars extraordinary startup businesses

creating positive social change.

27.    Through careful cultivation of its various products and services, EM

has developed an outstanding reputation as an innovator in the field of business

start-ups and strategy and has established an extremely loyal customer following.

28.    EM has received a tremendous amount of public recognition and

acclaim for the products sold and services provided under its ENTREPRENEUR

Mark.  Through EM's widespread and continuous use of the ENTREPRENEUR

Mark, it has acquired extensive goodwill, developed a high degree of

distinctiveness, and become famous, well known, and recognized as identifying

goods and services that originate from EM.

29.    The fame and quality of the products and services bearing the

ENTREPRENEUR Mark have been widely recognized through industry awards

and commendations.  For example, *ENTREPRENEUR* magazine was rated #1

among the top twelve "Most Relevant Business Magazines for Entrepreneurs in

2023" by Altar.io, and was a finalist in two categories in the 2018 Folio Digital

Awards for "Best Website Relaunch" and "Best User Experience."  Additionally,

two of EM's editor-led podcasts recently earned recognition:  the "Problem

Solvers" podcast series earned the 2018 Digiday Publishing Award for "Best Use

of a Podcast" and the "How Success Happens" podcast series was a finalist in the 2018 Folio Digital Awards.  EM has also been honored as a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious *Maggie* award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EM's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EM has also received multiple Integrated Marketing Awards from MIN for its magazine and website, including being selected as an awards finalist in 2015.

30.    In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.  EM's management and staff have also been recognized for their contributions to publishing and the media industry, including such awards and recognitions in 2015 as (i) Folio's designation of an EM staff writer as one of the "Top Women in Media," and (ii) Fast Company's recognition on Twitter of EM's Editor-in-Chief as one of the "25 Smartest Women in Media."

**EM's Intellectual Property Rights**

31.    EM owns, and has obtained United States federal registrations for, the ENTREPRENEUR Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |
| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |
| ENTREPRENEUR | 38: Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9: Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings 38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the internet; video broadcasting services over the internet or other communications network, | 5,256,907 August 1, 2017 |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, video and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |
| ENTREPRENEUR | 25: Clothing, namely, shirts; fleece pullovers; pullovers; shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; T-shirts; Headgear, namely, hats, caps. | 4,690,619 February 24, 2015 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, | 3,470,064 July 22, 2008 |

LATHAM&WATKINSLLP  US-DOCS\157956678.2
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
|  | and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public |  |
| **E P** Entrepreneur Press | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR VOICES | 9: Downloadable digital books in the nature of e-books, namely, a downloadable series of non-fiction e-books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, including inspirational stories and timeless advice 16: Paper goods and printed matter, namely, a series of non-fiction books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, and inspirational stories and timeless advice | 5,854,545 September 10, 2019 |

32.    The above marks are collectively referred to as the "EM Marks."  The above registrations are collectively referred to as the "EM Registrations."

33.     EM's five U.S. registrations for the ENTREPRENEUR Mark (Nos. 1,453,968; 2,263,883; 2,502,032; 4,260,948; 4,345,424; 4,690,619) and several other of the foregoing registrations are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EM's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

34.     Further, the EM Registrations constitute prima facie evidence that the EM Marks are valid, and that EM is entitled to the exclusive use of the EM Marks in commerce throughout the United States on the goods and services listed in the registrations.

35.     EM, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EM Marks, and in particular under the ENTREPRENEUR Mark.  In fact, EM has used the ENTREPRENEUR Mark in commerce for over forty years, having first adopted that mark for magazines at least as early as May 2, 1978, which is famous, well-known, and recognized as identifying goods and services that originate from EM.

36.     Through careful cultivation of its goods and services provided under the EM Marks, and in particular the ENTREPRENEUR Mark, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through EM's widespread and continuous use of its family of EM Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

37.     Additionally, EM has developed strong common law trademark rights to the E Logo.  Indeed, through EM's widespread and continuous use of its E

Logo, the logo has acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

38.   Numerous courts across the country have recognized the strength of the EM Marks, including[1]:

    i.   The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

    ii.   The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

    iii.   The U.S. District Court for the Central District of California in a later case adopted the holding of the district court in the Smith case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark. *See Entrepreneur Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx), Docket No. 22 (C.D. Cal., Sept. 11, 2018).

    iv.   The U.S. District Court for the Central District of California recently held that "the EMI Marks, including the ENTREPRENEUR® mark,

---

[1] Some of the cases cited mention "Entrepreneur Media, Inc." or "EMI." These refer to EM, as Entrepreneur Media, Inc. is EM's predecessor in interest.

have acquired extensive goodwill, developed a high degree of

distinctiveness, and become famous, well known, and recognized as

identifying goods and services that originate from EMI such that they

are deserving of strong protection." *See Entrepreneur Media, Inc. v.*

*Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 U.S. Dist. LEXIS

130502, at *15 (C.D. Cal. July 12, 2021) (also finding that EM's

rights were violated by the ENTREPRENEUR AFFILIATES

MASTERY and ENTREPRENEUR AFFILIATES marks).

   v.   The U.S. District Court for the Central District of California has also

twice held that "the ENTREPRENEUR Mark and EMI's related

marks have developed a high degree of distinctiveness and become

well-known and recognized as identifying goods and services that

originate from EMI." *Entrepreneur Media, Inc. v. Entrepreneurs*

*Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D.

Cal., Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation*

*Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal.,

August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc.*

*v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D.

Cal., December 20, 2018) (recognizing that EM's marks are

protectable and have been used for over forty years); *Entrepreneur*

*Media, Inc. v. John Doe d/b/a/ Entrepreneur Press*, No. 19-cv-01706-

JLS-JDE, Docket No. 23 (C.D. Cal., October 21, 2020) (recognizing

the same).  These courts also held that EM's rights were violated by,

respectively, the ENTREPRENEUR OPPORTUNITIES mark, the

ENTREPRENEUR TV mark, the FIT ENTREPRENEUR

MAGAZINE mark, and the ENTREPRENEUR PRESS mark.

   vi.   The U.S. District Court for the District of Colorado held that "the EMI

Marks, and in particular the ENTREPRENEUR® mark, have acquired

1    extensive goodwill, developed a high degree of distinctiveness and

2    secondary meaning, and become well known, famous, and recognized

3    as identifying goods and services that originate from EMI, such that

4    they are deserving of strong protection." *Entrepreneur Media, Inc. v.*

5    *Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D.

6    Colo. Dec. 15, 2017) (also finding that EM's rights were violated by

7    the ENTREPRENEUR SUPPORT mark).

8    vii.    The U.S. District Court for the District of Connecticut has recognized

9    that "the EMI Marks, and in particular the ENTREPRENEUR Mark,

10    have acquired extensive goodwill, developed a high degree of

11    distinctiveness and secondary meaning, and become well known and

12    recognized as identifying goods and services that originate from EMI,

13    such that they are deserving of strong protection." *Entrepreneur*

14    *Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19

15    (D. Conn. Aug. 19, 2015) (also finding that EM's rights were violated

16    by the ENTREPRENEUR WEEK mark).

17    viii.    The U.S. District Court for the District of Maryland has twice

18    recognized the EM Marks as valid, strong, and distinctive.

19    *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*,

20    No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket

21    No. 47 (Apr. 7, 2014) (also finding that EM's rights were violated by

22    the ENTREPRENEURS EDGE mark).

23    ix.    Both a Magistrate Judge and District Court Judge in the Eastern

24    District of Virginia found the ENTREPRENEUR Mark to be

25    distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*,

26    No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding

27    that EM's rights were violated by the registration of the

28    *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

**Defendants' Infringing Mark**

39.    In a blatant attempt to capitalize on EM's goodwill and its strong

rights in the ENTREPRENEUR Mark, Defendants adopted a nearly identical mark

with only a slight misspelling and registered the associated misspelled

*en*TER*prenuer*.org domain name (underlining added for clarity) to host a website

using the EN*TER*PREN*UER* Mark, as shown below:



(*en*TER*prenuer*.org)

40.    Under the EN*TER*PREN*UER* Mark, Defendants have provided

various goods and services, including online articles, blogs, and resources for

people interested in starting or building a business.

41.    Additionally, Defendants offer various levels of paid packages to

individuals who are interested in being interviewed and thereafter having a story

published based on that interview, as shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

> The packages are listed below. **Support our Mission. You can
> help Enterprenuer.org Reach out.**
>
> Choose the packages that suit you.
>
> One time.
>
> **No Sorry,**
> ***Next time,***
> ***for sure***
>
> $0 for you
>
> - Get published
> - Single link
> - Take times
>
> _____
>
> **True,**
> ***I support***
> ***your mission***
>
> **$50** for you
>
> - Get published now
> - Three dofollow backlink
> - Relevant external link
> - Visitor analytics
>
> _____
>
> **Kudos,**
> ***Essentials***
> ***I love what you do***
>
> **$100** for you
>
> - Everything in True
> - Stick to the homepage
> - Stick to the city page
> - Stick to the State page
> - Badge of honor

23

(*www.en<u>terprenuer</u>.org/submit-story/*)

24

     42.    Defendants have also used an "E" logo, which is an abbreviation for

25

the EN<u>TERPRENUER</u> Mark (the "Infringing E Logo"). The Infringing E Logo

26

bears significant resemblance to EM's E Logo. Specifically, both logos contain a

27

white letter "E" with a black background, giving them the same overall look and

28

feel, as seen below:



**Infringing E Logo**                    **EM's E Logo**

43.     Defendants use the Infringing E Logo on their website to provide the same types of goods and services offered under the EN<u>TER</u>PREN<u>UER</u> Mark.

44.     Defendants have made their goods and services available to residents of California.  Indeed, Defendants offer their goods and services on their website, and any resident in California can access this website.

45.     Moreover, Defendants publish a substantial number of articles about individuals who reside in California and this District.  For example, Defendants published an article on Dr. Sonny Rubin, "a respected pain management specialist and anesthesiologist in Newport Beach, California," as shown below:




(*www.en<u>ter</u>pren<u>uer</u>.org/ceo/meet-dr-sonny-rubin-orange-county-pain-specialist/*)

46.    Not only are Defendants using the ENTERPRENUER Mark and Infringing E Logo to offer goods and services, but they are also targeting EM and impersonating the company.

47.    For example, Defendants misleadingly listed EM's legitimate domain name (*entrepreneur.org*) and EM's previous corporate address on their website, and they claimed that EM's address was their "headquarters," as shown below:



(*www.web.archive.org/web/20240228121034/https://enterprenuer.org/contact-us/*)

48.    Additionally, Defendants' website contains links to various social media accounts, including Facebook, Twitter/X, Instagram, and LinkedIn, and each of these links redirects consumers to EM's legitimate social media accounts, as shown below:

(*enterprenuer.org*)

1



10 (*www.facebook.com/Entrepreneur*, accessed by clicking the Facebook icon shown

11 above on *enterprenuer.org*)



19 (*www.instagram.com/entrepreneur*, accessed by clicking the Instagram icon shown

20 above on *enterprenuer.org*)

21      49.    In light of EM's renown, online presence, and long history of

22 providing goods and services under the EM Marks and E Logo, EM is very

23 concerned that consumers will likely be confused and mistakenly believe that

24 Defendants and their goods and/or services are endorsed, approved, or sponsored

25 by, or affiliated, connected, or associated with, EM.

26      50.    EM's concern about a likelihood of consumer confusion is not merely

27 hypothetical. **Consumers have already been confused**.

28

51.    For example, in a recent blog post, Defendants published an article on Dr. Alexander Everest, an individual who, on information and belief, resides in this District:



(*www.en̲t̲e̲r̲p̲r̲e̲n̲u̲e̲r̲.org/founders/meet-dr-alexander-everest-founder-of-residents-medical/*)

52.    After this article was published on Defendants' website, Dr. Everest's representative reached out to EM and demanded that this article be immediately removed. Of course, EM did not publish this article, since it was published on Defendants' website, not EM's website. Thus, Dr. Everest and his representative suffered confusion as to the source of this article, which was caused by Defendants' trademark infringement.

My name is Eric Rivas, and I am writing on behalf of Dr. Michael Everest, the rightful Founder and Chairman of Residents Medical. On April 20, 2024, Entrepreneur.com published an article that is factually incorrect: Meet Dr. Alexander Everest, Founder of Residents Medical.

Dr. Alexander Everest is not associated with Residents Medical or is in any position of influence. On your own website, there's an article stating that Dr. Michael Everest is the CEO of Residents Medical.

**We need to get the Alexander Everest article taken down by Monday, 5/29/24, by close of business, or we will take legal action. This is a very serious matter.**

53.    As another example of consumer confusion, an individual commented on an article posted on Defendants' website, stating that a "reputed magazine like *Entrepreneur* should not feature this low-life scammer" (emphasis added):



> ## 2 COMMENTS
>
> **KanakB**
> September 23, 2024 at 7:35 pm
>
> A reputed magazine like Entrepreneur should not feature this low-life scammer. My grandpa got scammed for 345$ in the name of qikbay. There are also many complaints on scammer.info as well. Read below.
>
> I called them and spoke to Timothy Pharris and Alex Hailes, both of whom had strong Indian accents. They attempted to trick me into paying $265.05. I obtained their IP information and GPS location, and found some personal phone numbers through their systems. @qikbayscam @jinigramscam
> Suspected scammers:
>
> Tarun Gaur (aka Tarun Parasher): +1 650-308-6363
> Kashish Mehra (allegedly handling the scam artists): +91 98107-59699
> Imran Khan: +91 99993-79795
>
> GPS location: Method Works Private Limited – 6th or 7th floor, Aykon Tower, Noida, UP 201304, India

(*www.enterprenuer.org/founders/meet-tarun-gaur-founder-of-qikfox*)

54.    Once again, EM did not publish the article in question; Defendants did, and this consumer was merely confused as to the source of the article.

55.    On information and belief, other consumers have been confused by Defendants' unlawful conduct.

56.    Defendants will thus reap the benefits of EM's reputation and goodwill based on this consumer confusion, to EM's detriment.

57.    EM attempted to reconcile its concerns with Defendants, including by a letter and various follow-up correspondence.  To EM's surprise, after EM sent Defendants a letter to address this matter, Defendants responded, "Do you also own fuckyou.com?"  Other than this derogatory response (shown below), Defendants never contacted EM again, and thus refused to cease use of the Infringing Mark.

> **EXTERNAL EMAIL - Purported sender:** Victor Parm <exteam24@gmail.com> emailing from exteam24@gmail.com
> Please confirm that this is the sender's correct address before replying, clicking a link, or opening an attachment.
>
> Do you also own fuckyou.com?

58.     Given Defendants' actions and continuing use of the Infringing Mark and Infringing E Logo, EM brought this suit to fully litigate and resolve the trademark issues between the parties.

**EM Is Harmed By Defendants' Continuing**

**Infringement & Unlawful Conduct**

59.     Defendants' continued use of the confusingly similar Infringing Mark and Infringing E Logo in commerce violates EM's valuable intellectual property rights in the EM Marks, the E Logo, and EM Registrations, and Defendants' knowing, intentional, willful, and malicious use of its marks is damaging to EM and EM's property.

60.     Defendants have used the Infringing Mark and Infringing E Logo to unfairly usurp and capitalize on the value and goodwill of the EM Marks, the E Logo, and the EM Registrations, particularly the ENTREPRENEUR Mark. Defendants are aware of EM's strong trademark rights and reputation in the marketplace, but nevertheless, use the Infringing Mark to profit from the goodwill associated with the EM Marks, E Logo, and EM Registrations.

61.     Defendants have intentionally and knowingly capitalized off of confusion between the EM Marks and E Logo (particularly the ENTREPRENEUR Mark), on the one hand, and the Infringing Mark and Infringing E Logo, on the other hand, including by providing content almost identical to EM's content, as described above.

62.     Due to Defendants' continuing willful infringement and unlawful conduct, EM is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EM had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

63.     EM's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants.

1  The public interest is best served by granting EM's requested relief against

2  Defendants.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

5  64.    EM incorporates by reference the factual allegations set forth above.

6  65.    EM owns the EM Marks and the EM Registrations.  The trademarks

7  reflected in the EM Registrations are strong and distinctive and designate EM as

8  the source of all products and services advertised, marketed, sold, or used in

9  connection with the EM Marks.  In particular, the ENTREPRENEUR Mark has

10 been used for over forty years and has been recognized by federal courts as a

11 strong and distinctive mark.

12 66.    EM is the senior user of the EM Marks as it began use of those marks

13 in interstate commerce prior to Defendants' first use of the confusingly similar

14 Infringing Mark.

15 67.    Defendants do not have authorization, license, or permission from EM

16 to market and sell their products and services under the Infringing Mark, which are

17 confusingly similar to the EM Marks, including the ENTREPRENEUR Mark, and

18 which are used by Defendants with products and services that are identical and/or

19 closely related to the particular products and services associated with the EM

20 Marks, particularly the ENTREPRENEUR Mark.

21 68.    Defendants were aware of the EM Marks, particularly the

22 ENTREPRENEUR Mark, as Defendants were on constructive notice based on

23 EM's longstanding federal registrations, as well as on actual notice based on EM's

24 numerous communications with Defendants about this matter.  Yet, Defendants

25 continued to use their Infringing Mark.  Thus, Defendants' unauthorized use of the

26 confusingly similar Infringing Mark was and is knowing, intentional, and willful.

27 69.    As a direct and proximate result of Defendants' wrongful conduct,

28 EM has been and will continue to be damaged.

70.   Defendants' actions therefore constitute trademark infringement.

71.   Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm EM.

72.   Defendants' activities have caused and will continue to cause irreparable harm to EM, for which it has no adequate remedy at law, because: (i) the EM Marks, and in particular the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EM's goodwill and customer relationships and is harming and will continue to substantially harm EM's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EM, are continuing.  Accordingly, EM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

73.   Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order: (i) requiring Defendants to account to EM for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EM that were caused by Defendants' conduct.

74.   Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of treble damages against Defendants.

75.   Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EM is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

## Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

76.   EM incorporates by reference the factual allegations set forth above.

77.    The EM Marks and E Logo, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EM as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EM's decades of use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark (as well as the EM Marks and E Logo), the EM Marks the E Logo, including in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the EM Marks and E Logo with a single source of products and services.

78.    EM is the senior user of the EM Marks and E Logo as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Mark.

79.    Defendants were aware of the EM Marks and E Logo, and in particular the ENTREPRENEUR Mark, because Defendants were on constructive notice based on EM's longstanding federal registrations, as well as on actual notice based on EM's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their Infringing Mark.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Mark was and is knowing, intentional, and willful.

80.    Through their use of the confusingly similar Infringing Mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EM somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar Infringing Mark.

81.    In fact, there is no connection, association, or licensing relationship between EM and Defendants, nor has EM ever authorized, licensed, or given

permission to Defendants to use the confusingly similar Infringing Mark in any manner.

82.     Defendants' use of the confusingly similar Infringing Mark will likely cause confusion as to the origin and authenticity of Defendants' website, and related goods and services, and will likely cause others to believe that there is a relationship between Defendants and EM when there is, in fact, not.

83.     As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

84.     Defendants' actions thus constitute false designation of origin and unfair competition.

85.     Defendants' activities have caused, and will continue to cause, irreparable harm to EM, for which it has no adequate remedy at law, in that: (i) the EM Marks and E Logo, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EM's goodwill and customer relationships and will substantially harm EM's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EM, are continuing.  Accordingly, EM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

86.     Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order: (i) requiring Defendants to account to EM for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EM that were caused by Defendants' conduct.

87.     Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of treble damages against Defendants.

88.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus, EM is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Common Law Trademark Infringement

89.    EM incorporates by reference the factual allegations set forth above.

90.    EM has valid and protectable common law rights in the EM Marks and E Logo.

91.    EM is the senior user of the EM Marks and E Logo.

92.    Defendants' conduct constitutes infringement of EM's common law rights in the EM Marks and E Logo.

93.    Defendants' use of the confusingly similar Infringing Mark on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and EM.

94.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based on the strength of EM's reputation and the substantial goodwill it has built up in the EM Marks and E Logo.

95.    As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

96.    Unless an injunction is issued enjoining any continuing or future use of the Infringing Mark by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage EM.  EM has no adequate remedy at law.  Accordingly, EM is entitled to an injunction.

### FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

97.    EM incorporates by reference the factual allegations set forth above.

98.    EM has expended significant time and expense in developing the EM Marks and E Logo and the high-quality products and services it markets and sells

1  under those marks.  The EM Marks and E Logo have been very successful and

2  have developed a substantial reputation and goodwill in the marketplace.

3       99.    Through their wrongful conduct, Defendants have misappropriated

4  EM's efforts and are exploiting the EM Marks, the E Logo, and EM's reputation to

5  market and sell their goods and services under the Infringing Mark.  These actions

6  constitute unfair competition.

7       100.   As a direct and proximate result of Defendants' wrongful conduct,

8  EM has been and will continue to be damaged.

9       101.   Unless an injunction is issued enjoining Defendants' unfairly

10  competitive conduct, EM will continue to be damaged irreparably.  EM has no

11  adequate remedy at law.  Accordingly, EM is entitled to an injunction.

12       102.   Defendants have acted willfully, intentionally and maliciously, such

13  that EM is entitled to punitive damages.

14                                                         **<u>PRAYER</u>**

15       WHEREFORE, EM prays for the following relief:

16       A.    An injunction ordering Defendants, and their officers, directors,

17  members, agents, servants, employees, and attorneys, and all other persons acting

18  in concert or participating with them (collectively, the "Enjoined Parties"), who

19  receive actual notice of the injunction order by personal or other service, to:

20             i.    cease all use and never use the EN<u>TER</u>PREN<u>UER</u> Mark, the

21                 Infringing E Logo, the EM Marks, the E Logo, or any other

22                 mark likely to cause confusion with the EM Marks or E Logo

23                 (including any misspellings or variations of those Marks) in, on,

24                 or with any products or services, or in connection with the

25                 advertising, marketing, or other promotion, distribution,

26                 offering for sale, or sale, of any products or services, including

27                 on websites and social media accounts;

28

ii.   never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with EM, or are licensed, approved, or authorized in any way by EM;

iii.   never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, EM;

iv.   never register any domain name that contains the ENTERPRENUER Mark, any of the EM Marks (including any misspellings or variations of those Marks), or any domain name confusingly similar to any of the EM Marks;

v.   transfer to EM all domain names in the Enjoined Parties' possession, custody, or control that include the words "enterprenuer" or "entrepreneur" (including any misspellings or variations of these words), or that are otherwise confusingly similar to or contain any of the EM Marks, or were used in connection with the ENTERPRENUER Mark including, but not limited to, the *www.enterprenuer.org* domain name;

vi.   cease all use of and never register or attempt to register any social media account that contains the ENTERPRENUER Mark, the Infringing E Logo, any of the EM Marks, the E Logo, or any misspelling or variation of those Marks, or any other

1    social media account confusingly similar to any of the EM

2    Marks or E Logo;

3    vii.    transfer to EM, disable, or delete any social media account that

4    was used to promote the ENTERPRENUER Mark or Infringing

5    E Logo, including all such accounts in Defendants' possession,

6    custody, or control that include the words "enterprenuer" or

7    "entrepreneur" (including any misspellings or variations of

8    these words), or that are otherwise confusingly similar to or

9    contain any of the EM Marks or E Logo;

10   viii.   never unfairly compete with EM in any manner whatsoever, or

11   engage in any unfair, fraudulent, or deceptive business practices

12   that relate in any way to the production, distribution, marketing,

13   and/or sale of products and services bearing any of the EM

14   Marks, the E Logo, or any other mark likely to cause confusion

15   with the EM Marks or E Logo, including any misspelling or

16   variation of those Marks; and

17   ix.    never apply for or seek to register the ENTERPRENUER Mark,

18   the Infringing E Logo, any of the EM Marks or E Logo, or any

19   other mark likely to cause confusion with the EM Marks or E

20   Logo, including any misspelling or variation of those Marks.

21   B.    An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined

22   Parties to file with the Court and serve on EM's counsel, within thirty (30) days

23   after service of the order of injunction, a report in writing under oath setting forth

24   in detail the manner and form in which the Enjoined Parties have complied with

25   the injunction.

26   C.    To give practical effect to the Court's injunction, an order that the

27   social networking service or entity (e.g., Facebook) related to any of the social

28   media accounts subject to this Order must, within fourteen (14) days of receipt of

the Order, transfer, disable, or otherwise cancel those subject accounts at EM's request if the Enjoined Parties have not already done so.

D. To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the foregoing domain names must, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to EM if the Enjoined Parties have not already done so.

E. An order finding that, by the acts complained of above, Defendants have infringed EM's federally-registered trademarks in violation of 15 U.S.C. § 1114.

F. An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

G. An order finding that, by the acts complained of above, Defendants have engaged in common law trademark infringement.

H. An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition.

I. An order awarding EM damages as follows:

  i. Pursuant to 15 U.S.C. § 1117(a), EM's actual damages, as well as all of Defendants' profits or gains of any kind from its acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages; and

  ii. Punitive damages pursuant to California common law.

J. An order pursuant to 15 U.S.C. § 1117(a), finding that this is an exceptional case and awarding EM its reasonable attorneys' fees.

K. An order pursuant to 15 U.S.C. § 1117(a), awarding EM all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct.

L. An order awarding EM pre-judgment interest.

1    M.    An order awarding EM such other relief as the Court deems

2    appropriate.

3                                    **JURY DEMAND**

4    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

5    demands a trial by jury.

6

7    Dated:  May 12, 2025                    Respectfully submitted,

8                                            LATHAM & WATKINS LLP

9                                            By: */s/ Perry J. Viscounty*

10                                               Perry J. Viscounty

11                                           *Attorneys for Plaintiff*
                                             ENTREPRENEUR MEDIA, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28